UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WEINGAND, | No. C-11-3109 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| HARLAND FINANCIAL SOLUTIONS, INC., *et al.*, | **(Docket No. 61)** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Michael Weingand filed suit against Harland Financial Solutions ("Harland") on June 23, 2011, alleging claims of, *inter alia*, wrongful termination, employment retaliation, and unfair business practices. Compl., Docket No. 1. On June 21, 2012, pursuant to Court order, Plaintiff filed the operative First Amended Complaint ("FAC"). Docket No. 57. Pending before the Court is Defendant's motion to dismiss the first, second, fourth, and fifth claims of Plaintiff's FAC. Docket No. 61. Having considered the parties' briefs and oral argument, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## II. FACTUAL & PROCEDURAL BACKGROUND

In the FAC, Plaintiff alleges as follows. Plaintiff Michael Weingand is a former employee of Defendant Harland, where he worked as a Senior Field Engineer. FAC ¶ 4. Plaintiff began working for Harland's predecessor, Ultradata, in 1997. *Id.* ¶ 9. He began work as a trainer, but received additional duties almost immediately. *Id.* ¶ 11. Plaintiff moved to the Implementations Department after two years, and then received a promotion to Field Engineering two years later. *Id.* ¶ 12.

1 Plaintiff remained in Field Engineering for the duration of his employment with Harland. *Id.* He
2 achieved senior status in that department in 2006, and received regular pay increases based on his
3 performance. *Id.* ¶ 13. He is certified both in Windows server and applications, and in OnBase. *Id.*
4 ¶ 15. He continued to develop marketable skills during his employment at Harland, including, *e.g.*,
5 becoming the lead HTML programmer in his department and leading various internal personnel
6 training sessions. *Id.* ¶¶ 17-19. Plaintiff also distinguished himself in the quality of customer service
7 he provided. *Id.* ¶¶ 20-21.

8 In or around 2008, Harland promoted Mr. Scott Holmes to supervise Plaintiff's work from
9 Columbus, Ohio. *Id.* ¶ 22. Holmes required Plaintiff and other Field Engineers to put in 120%
10 billable time, requiring that they work on multiple clients at a time and work from home in the
11 evenings and on weekends. *Id.* ¶ 23. He also increased Plaintiff's workload by giving him several
12 new organizational tools and project plans to build and implement. *Id.* ¶ 24. In May 2010, Plaintiff
13 and his group were required to rotate "beeper duty," through which they could provide 24-hour
14 service. *Id.* ¶ 26. Although Harland had previously given "beeper pay" to its employees for such
15 after-hours work, such pay was eliminated under Holmes. *Id.* ¶ 27.

16 In response to the new beeper assignment and pay policy, Plaintiff "questioned and
17 complained whether this . . . was acceptable under Defendant Harland's policies and under
18 California law." *Id.* ¶ 28. Upon learning of his questions, Holmes became angry, instructed Plaintiff
19 not to organize any meetings on the subject, and told Plaintiff he "need[ed] to know [his] place." *Id.*
20 Plaintiff then lodged a formal complaint to Human resources, "who confirmed that Plaintiff had
21 acted appropriately." *Id.* However, Harland "took no disciplinary action against Holmes." *Id.* ¶ 29.

22 Plaintiff alleges that Holmes subsequently retaliated against him by, *inter alia*, exercising
23 higher scrutiny over Plaintiff's work without any "legitimate business purpose," and reprimanding
24 him for not calling in sick despite the fact that Plaintiff had informed him of his sick time. *Id.* ¶¶ 30,
25 33. Holmes placed Plaintiff on a Performance Improvement Plan, and included in the Plan warnings
26 about Plaintiff's performance about which Plaintiff had not previously received any notice. *Id.* ¶ 31.
27 Although Plaintiff complied with the Plan, he was terminated less than one month after its
28 institution, in November 2010. *Id.* ¶¶ 32, 10. Plaintiff alleges that prior to his termination, Harland

2

was aware both of the increased stress level caused by Holmes and of Plaintiff's "temporary disability for which he was being treated at the time of the termination of his employment." *Id.* ¶ 34. Plaintiff alleges that he exhausted his administrative remedies by making a charge of retaliation to the California Department of Fair Employment and Housing ("DFEH") and obtaining a right to sue letter. *Id.* ¶ 35.

Plaintiff filed suit against Harland asserting causes of action for Retaliation under California Labor Code §§ 1198.3 (refusing to work excess hours) and 98.6 (making labor complaint); for Retaliation under California Government Code § 12945.2 for taking California Family Rights Act leave; for Wrongful Termination in Violation of Public Policy; and for Unfair Business Practices under California Business and Professions Code § 17200, *et seq.* ("UCL").

Pending before the Court is Defendant's motion to dismiss Plaintiff's First (§ 1198.3), Second (§ 98.6), Fourth (Wrongful Termination), and Fifth (UCL) causes of action.

### III.  DISCUSSION

A.  Legal Standard

Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. Of Bus. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

3

B.  **First and Second Claims - Retaliation in Violation of California Labor Code §§ 1198.3, 98.6**

Defendant raises a number of challenges to Plaintiff's claims under Labor Code §§ 1198.3 and 98.6. First, Defendant argues that Plaintiff has failed to exhaust his administrative remedies before the Labor Commissioner under § 98.7. Second, Defendant argues Plaintiff has failed to state a claim under either substantive provision in any case. Because, as discussed below, the Court concludes Plaintiff fails to state a claim under these statutes, it need not address whether Plaintiff has sufficiently exhausted his remedies.

1.  Section 1198.3 and the Proposed § 1102.5 Claim

Defendant argues that there is no private right of action for alleged violations of California Labor Code § 1198.3, and that Plaintiff has failed to state a claim under the statute in any event. Plaintiff does not respond to either argument in his opposition, and his proposed Second Amended Complaint eliminates this cause of action in favor of a cause of action for retaliation under § 1102.5. Accordingly, the Court **GRANTS** Defendant's motion to dismiss this claim.

However, Plaintiff attaches a proposed SAC to his opposition, which makes two substantive changes from the FAC. First, it eliminates the previous third cause of action, which is not at issue in the pending motion. Second, it eliminates the first cause of action under § 1198.3, and replaces it with a cause of action for retaliation in violation of the whistleblower statute, § 1102.5. Section 1102.5 provides, in relevant part:

> (a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.
>
> (b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.
>
> (c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

4

>    (d) An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.
>
>    (e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).
>
>    (f) In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section.

Cal. Labor Code §§ 1102.5(a)-(f).

In this case, Plaintiff cannot make out a § 1102.5 claim because he does not allege that he reported any suspicions of unlawful activity to any government agency, nor does he allege that he refused to do anything that would violate the law. Rather, he merely asserts that he complained about Defendant's practices and questioned whether they were legal to his own human resources department. Such a complaint does not raise whistleblower protection under § 1102.5. *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 77 (1998) ("Section 1102.5, subdivision (b), concerns employees who report to public agencies. It does not protect plaintiff, who reported his suspicions directly to his employer."); *Bursese v. Paypal, Inc.*, C-06-00636RMW, 2007 WL 485984 (N.D. Cal. Feb. 12, 2007) ("PayPal contends, and this court agrees, that Cal. Labor Code Section 1102.5(b) does not apply to plaintiff because he only reported his concerns to a private employer, rather than a public agency.") (citing *Green*, 19 Cal.4th at 77 (1988)). In addition, Plaintiff does not allege "that []he either attempted or expressed an intention to notify government officials of alleged [] violations at [Harland], and that [his retaliation] was pursuant to a rule, regulation, or policy preventing [Harland] employees from disclosing information to government authorities." *Jones v. Thyssenkrupp Elevator Corp.*, C-05-3539 EMC, 2006 WL 680553, at *5 (N.D. Cal. Mar. 14, 2006).

Unlike § 1102.5, certain statutory provisions of the Labor Code related to, *e.g.*, workplace safety, provide broader whistleblower protection that may encompass complaints to one's employer. Courts evaluating these broader provisions have acknowledged claims such as preemptive retaliation, when a plaintiff alleges that an employer retaliated against him or her in anticipation that the employee would file a report against the employer. *See* Cal. Lab. Code § 6310(b) (granting right

5

of reinstatement and reimbursement to "[a]ny employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to . . . his or her employer, or his or her representative, of unsafe working conditions, or work practices"); *Lujan v. Minagar*, 124 Cal. App. 4th 1040, 1045 (2004) (acknowledging preemptive retaliation claim under § 6310 based on employer's admission that it fired plaintiff out of fear she would report a workplace safety violation); *see also Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1255 (2008) (applying *Lujan* to preemptive retaliation claim under FEHA, Cal. Govt. Code § 12940, which forbids retaliation against employee who "has opposed any practices forbidden under this part"). Section 1102.5(b) does not contain broad statutory language found sufficient in these cases to provide authority for a preemptive retaliatory claim based on internal complaints. As a Southern District of California court explained, "section 1102.5(b) doesn't stack neatly onto sections 6310 or 12940, and to the extent this reflects a varied legislative purpose, it is reason enough for the Court to decline to extend the holding of *Lujan* to claims brought under section 1102.5(b)." *Steffens v. Regus Group, PLC*, 08-CV-1494-LAB BLM, 2011 WL 666906, at *3 (S.D. Cal. Feb. 16, 2011) *rev'd on other grounds*, 11-55379, 2012 WL 2393637 (9th Cir. June 26, 2012).[1] Section 1102.5's limited protection of disclosures "to a government or law enforcement agency" thus supports holding plaintiffs to the statute's parameters. Plaintiff identifies no case applying a preemptive retaliation claim to § 1102.5.

At the hearing, Plaintiff raised the argument that he has a § 1102.5(c) claim based on his allegation that he was retaliated against for "refusing to participate in an activity" that would result in a violation of the wage and hour law. This argument is predicated on an assertion that by merely being victimized by an unlawful wage and hour practice, Plaintiff "participate[s]" in an unlawful activity. However, the language of subsection (c) traditionally applies to employees who take or refuse to take action which facilitates an employer's violation of the law. *See, e.g.*, *Ferretti v. Pfizer Inc.*, 11-CV-04486, 2012 WL 694513, at *1, 7-8 (N.D. Cal. Feb. 29, 2012) (describing alleged

---

[1] The appellant appealed only the common law wrongful termination claim to the Ninth Circuit, not the statutory claim under § 1102.5.

retaliation against an employee who reported illegal defects in the data for Phase I clinical trials of a cancer drug and refused to participate in Phase III trials because of those illegalities); *Casissa v. First Republic Bank*, C09-04129 CW, 2010 WL 2836896 (N.D. Cal. July 19, 2010) (describing bank employees' alleged retaliation for refusing to violate disclosure laws requiring them to report suspicions of financial crimes). *See generally Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980) (describing common law claim of retaliation for refusal to engage in price-fixing). Plaintiff cites no authority for the rather novel proposition that participation can consist simply of being the victim of an unlawful labor practice. Indeed, another court in this district has explicitly rejected just such an argument. *See Hollie v. Concentra Health Services, Inc.*, C 10-5197 PJH, 2012 WL 993522, at *5 (N.D. Cal. Mar. 23, 2012) ("While it is true that it is unlawful under California's labor laws for an *employer* to refuse to pay hourly non-exempt employees for time they have worked, an *employee* who works without pay is not 'participat[ing] in' or engaging in, a criminal act, as plaintiff claims. Accordingly, the court finds as a matter of law that plaintiff cannot establish that he engaged in an act protected under § 1102.5(c).") (emphasis in original).

Accordingly, Plaintiff's proposed change to his complaint is futile, and the Court therefore denies leave to amend to assert a § 1102.5 claim. *See generally* 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) ("[I]f a complaint as amended could not withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile.").

2. <u>Failure to State a Claim Under § 98.6</u>

Defendant next argues that Plaintiff fails to state a claim under § 98.6, which provides, in relevant part,

> No person shall discharge an employee or in any manner discriminate against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter, including the conduct described in Chapter 5 (commencing with Section 1101) of Part 3 of Division 2,[2] or because the employee . . . has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner, or has testified or is about to testify in any such

---

[2] Chapter 5 prohibits employers from, *inter alia*, forbidding or controlling employees' political activities (§§ 1101, 1102), and preventing employees from reporting unlawful conduct to the government or retaliating against them for doing so (§ 1102.5).

7

>proceeding or because of the exercise by the employee . . . of any rights afforded him or her.

Cal. Labor Code § 98.6(a). In other words, "[u]nder § 98.6, employers may not discharge or discriminate against an employee for political activities; for whistleblowing; for assigning wage claims to the Labor Commissioner resulting from demotion, suspension, or discharge for lawful conduct occurring during nonworking hours away from employer's premises; for filing a complaint with the Labor Commissioner or testifying in such proceedings; for initiating proceedings against the employer to collect civil penalties under the 'Labor Code Private Attorneys General Act;' and for exercising 'any rights afforded him or her.'" *Hollie*, 2012 WL 993522, at *6 (citing Lab. Code § 98.6(a); Ming W. Chin, *et al.*, *California Practice Guide: Employment Litigation* §§ 7:1476, *et seq.* (2011)).

Plaintiff's FAC alleges that he engaged in protected activity under § 98.6, "to wit, complaining about and threatening to escalate his complaints about the required overtime without pay." FAC ¶ 48. As with § 1102.5 above, Defendant argues that such conduct is not a protected activity under § 98.6. Because it is undisputed that Plaintiff did not file a bona fide complaint or institute any official proceeding prior to his termination, nor did he testify in such a proceeding, the only question is whether Plaintiff's complaints to his employer constitute the "exercise . . . of any rights afforded him" under this provision. Lab. Code § 98.6(a).

As another court in this District recently noted, "[w]hile § 98.6(a) appears to broadly proscribe terminations for the exercise of "any rights," the California Court of Appeal in *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72 (2004), thoroughly analyzed the statute, and concluded that this prohibition can be applied only to conduct protected by the Labor Code." *Hollie*, 2012 WL 993522 at *6. The *Grinzi* court examined the statute's legislative history and concluded that "the Legislature ha[d] indicated an intention to limit the proscription against terminations for the exercise of 'any rights' to the exercise of those rights 'otherwise protected by the Labor Code.'" *Grinzi*, 120 Cal. App. 4th at 87; *see also id.* at 88 (rejecting a claim for wrongful termination under § 98.6 based on "a private employer's termination of an employee for the employee's lawful conduct,

8

otherwise unprotected by the Labor Code, occurring during nonworking hours away from the employer's premises").

Applying *Grinzi*, the court in *Hollie* considered a case in which "[t]he basis of plaintiff's § 98.6 claim is that he 'complained' – verbally and in e-mails – to his supervisors Dr. Swann and Dr. Stevens about Concentra's policy of not paying for overtime for medical providers," and that such complaints were protected activity. *Hollie*, 2012 WL 993522 at *7. The court rejected that argument and held "as a matter of law that neither the verbal/e-mail protests, nor the protests 'by conduct,' were activities protected under § 98.6, because they do not fall within the categories set forth in that statute." *Id.*[3]

Plaintiff makes no argument as to why or under what provision his complaints to his superiors constitute a protected activity under the provisions of § 98.6. *Hollie* is directly on point, and the Court agrees that Plaintiff has failed to state a § 98.6 claim for failure to allege that he engaged in protected activity. As in *Hollie*, here Plaintiff merely alleges that he complained of his employer's conduct within the company itself, conduct the *Hollie* court found unprotected under the Labor Code. Plaintiff's conduct comes closest to whistleblowing activity under § 1102.5 which, as discussed above, does not apply here absent an allegation that he made a report to a public authority. As Plaintiff's counsel admitted during oral argument, Plaintiff can identify no other provision under the Labor Code within which his conduct would fall.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's § 98.6 claim with prejudice.

C.   Fourth Claim - Wrongful Termination in Violation of Public Policy

Defendant next argues that Plaintiff fails to state a claim for common law wrongful termination in violation of public policy ("wrongful termination" or "WTVPP"). *See, e.g.*, *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 966 (N.D. Cal. 2010) (describing a claim for "'Wrongful Employment Practices in Violation of Public Policy,' which is often referred to as a

---

[3] Although *Hollie* considered a motion for summary judgment rather than a motion to dismiss, the difference is immaterial here because the court made a legal ruling assuming the evidence supported Plaintiff's allegations.

*Tameny* claim") (citing *Tameny*, 27 Cal.3d at 176-177); *see also id.* at 178 ("[A]n employer may not coerce compliance with [] unlawful directions by discharging an employee who refuses to follow such an order."); *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 71 (1998) (describing *Tameny* as holding "that at-will employees may recover tort damages from their employers if they can show they were discharged in contravention of fundamental public policy.").

Here, the wrongful termination is based on Plaintiff's allegation that Defendant retaliated against him after he complained of potentially unlawful employment practices. As the California Court of Appeal has explained:

> Wrongful termination from employment is tortious when the termination occurs in violation of a fundamental public policy. (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090.). A policy is "fundamental" when it is "carefully tethered" to a policy "delineated in constitutional or statutory provisions" (*id.* at p. 1095), involves a duty affecting the public at large, rather than one owed to or imposed solely upon the parties to a dispute (*id.* at p. 1090), and is " 'well established' " and "sufficiently clear" to the employer at the time of the discharge (*ibid.*). Wrongful termination cases typically arise when an employer retaliates against an employee for refusing to violate a statute, performing a statutory obligation, exercising a statutory right, or reporting an alleged violation of a statute of public importance. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1256.). However, as we noted in *Soules v. Cadam, Inc.* (1991) 2 Cal. App. 4th 390, 401, an action for tortious discharge is not strictly limited to these situations but will lie "wherever the basis of the discharge contravenes a fundamental public policy."

*Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1147 (1995). Thus, "[a]n employee establishes a claim for wrongful termination in violation of public policy if he proves that the employer 'violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision.'" *Remus v. Fios, Inc.*, C 11-01264 CRB, 2012 WL 707477 (N.D. Cal. Mar. 5, 2012) (quoting *Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 1256 (1994)); *Cf. Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 670-71 (1988) ("When the duty of an employee to disclose information to his employer serves only the private interest of the employer, the rationale underlying the *Tameny* cause of action is not implicated.").

"In determining whether Plaintiff can establish a claim for retaliation, or wrongful termination, California courts apply the formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Id.* "Thus, in order to establish a prima facie case supporting a retaliation

claim, a plaintiff must show: (1) that he engaged in a protected activity; (2) the employer subjected him to an adverse employment action, and (3) a causal link between the protected activity and the employer's action." *Id.* (citing *Akers v. Cnty. of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002)).

In the instant case, Plaintiff has stated a valid claim for wrongful termination. Although Defendant cites authority equating the wrongful termination claim with the underlying statutory causes of action, *see, e.g.*, *Quintana v. Quest Diagnostics Inc.*, 1:12CV00824 LJO DLB, 2012 WL 2339119 (E.D. Cal. June 19, 2012); *Hollie*, 2012 WL 993522 at *8; other cases with similar facts to the instant case have looked to the public policy evinced by the *purpose* of various statutes as opposed to a mechanical application of the statutory causes of action on an element-by-element basis.

In *Steffens*, for example, although the court concluded the plaintiff could not make out a § 1102.5 claim based on the employee's reports to a private employer, such conduct was protected activity under the wrongful termination claim. *Steffens*, 2011 WL 666906 at *9-10 ("While Steffens's section 1102.5 claim alleged that Regus terminated her for fear that she would report Regus, a more basic wrongful termination claim can allege that she was terminated simply for complaining to Regus in the first place [about the failure to provide meal and rest breaks]."). The Ninth Circuit recently affirmed *Steffen's* holding, confirming there was "no dispute that Steffens established a prima facie case of retaliation" based on complaints "about the company's policy of denying meal and rest breaks to hourly employees in violation of California law." *Steffens v. Regus Group, PLC*, 11-55379, 2012 WL 2393637 (9th Cir. June 26, 2012) (unpublished). Likewise, here Plaintiff alleges he was fired for bringing potential illegal activity – unpaid overtime – to the employer's attention.[4]

Similarly, in *Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th 1137, 1149 (1995), the plaintiff "reported to MSI management that a number of MSI employees were currently working

---

[4] Whether the employer's underlying conduct was actually illegal is immaterial. *See Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 87 (1998) ("[A]n employee need not prove an actual violation of law; it suffices if the employer fired him for reporting his reasonably based suspicions of illegal activity.") (internal citations and quotation marks omitted).

11

overtime but not being paid overtime wages. Thus, Gould informed MSI about ongoing conduct which was not only inimical to the public health and general welfare but also illegal." The court concluded that "if MSI discharged Gould in retaliation for his reporting violations of the overtime wage law to MSI management, it violated a fundamental public policy of the state." *Id.* at 1150. The court distinguished *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 669 (1988) – in which the California Supreme Court rejected a claim based on an employee's internal report of a supervisor's past illegal conduct as insufficiently connected to the public interest – from circumstances in which, as here, the employee is reporting "*present* illegal or unsafe conduct with the *current* employer." *Gould*, 31 Cal. App. 4th at 1149. *See generally Collier v. Superior Court*, 228 Cal. App. 3d 1117, 1123 (1991) (finding that § 1102.5 "reflects the broad public policy interest in encouraging workplace 'whistleblowers,' who may without fear of retaliation report concerns regarding an employer's illegal conduct," and that "[e]ven though the statute addresses employee reports to public agencies rather than to the employer and thus does not provide direct protection to petitioner in this case, it does evince a strong public interest in encouraging employee reports of illegal activity in the workplace") (citations omitted).

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's wrongful termination claim.

D. Fifth Claim - UCL

1. Failure to State a Claim

The UCL bars as unfair competition "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendant argues that Plaintiff fails to state a claim under the UCL for unlawful or unfair business practices. Although Plaintiff's FAC does not specify, Plaintiff's opposition limits his UCL claim to the unlawful prong, as he states only that he "has alleged that Defendant violated the California Labor Code and thereby committed an unfair business practice." Opp. at 6 (citing FAC ¶¶ 38-39, 47-48, 76-78). The first two portions of the FAC to which Plaintiff cites refer to his substantive allegations under §§ 1198.3 and 98.6. Therefore, his UCL claims based on those statutes rise and fall with the substantive merits of those statutory claims discussed above. *Dorado v. Shea Homes Ltd. Partnership*, No. 1:11–cv–01027 OWW SKO, 2011

1  WL 3875626, at *19 (E. D. Cal. Aug.31, 2011) ("Where a plaintiff cannot states a claim under the
2  'borrowed' law, []he cannot state a UCL claim either.") (quoting *Smith v. State Farm Mutual*
3  *Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)). Plaintiff's counsel confirmed at oral
4  argument that the current UCL claim merely alleges a violation based on the statutory claims the
5  Court has already rejected above.

6  However, Plaintiff's final citation, to FAC ¶¶ 76-78, refers to his UCL allegations in the FAC
7  that "Defendants have followed and continue to follow the unlawful and unfair business practice of
8  requiring employees to work excess hours beyond the full-time work schedule, by performing tasks
9  that are outside the applicable job description, without compensation," and that "Defendant Harland
10 has profited from and is unjustly enriched by this unfair business practice as Harland is able to retain
11 earned wages owed to its employees." Although, as Plaintiff's counsel admitted, such allegations
12 are not currently sufficient to allege specific unfair practices based on substantive violations of the
13 Labor Code (*e.g.*, by requiring employees to work excess hours without compensation), Plaintiff
14 requests leave to amend to attempt to make a viable UCL claim. The Court therefore **GRANTS**
15 Defendant's motion to dismiss with leave to amend.

16          2.      Damages & Penalties

17 Defendant separately argues Plaintiff may not recover any damages or penalties under the
18 UCL, even assuming he has a viable claim. Plaintiff does not respond to this argument. As this
19 Court has previously explained, "[o]nly two forms of relief are available [under the UCL]: restitution
20 and/or an injunction." *Freeman v. ABC Legal Services, Inc.*, --- F. Supp. 2d ----, C-11-3007 EMC,
21 2012 WL 2589965 (N.D. Cal. July 3, 2012) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29
22 Cal. 4th 1134, 1144 (2003) (citations omitted)). Thus, Plaintiff's amended complaint may not seek
23 such damages.

24          3.      Restitution

25 Finally, Defendant argues Plaintiff fails to provide any factual basis for restitution under the
26 UCL. The California Supreme Court has held "that orders for payment of wages unlawfully
27 withheld from an employee are [] a restitutionary remedy authorized by section 17203" of the UCL.
28 *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000). Thus, to the extent

Plaintiff could allege a UCL claim based on Defendant's practice of failing to pay workers overtime, withheld wages may be a form of restitution Plaintiff could obtain.

### IV. CONCLUSION

For the foregoing reasons, The Court **GRANTS** Defendant's motion to dismiss Plaintiff's statutory claims under §§ 98.6 and 1198.3 with prejudice, **DENIES** leave to amend to allege a § 1102.5 claim, **DENIES** Defendant's motion to dismiss Plaintiff's wrongful termination claim, and **GRANTS** Defendant's motion to dismiss Plaintiff's UCL claim with leave to amend.

This Order disposes of Docket No. 61.

IT IS SO ORDERED.

Dated: August 14, 2012

_____
EDWARD M. CHEN
United States District Judge

14